UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| STEVE E. MORSE<br>10 East Ave<br>Baltimore, MD 21224<br><br>        Plaintiff,<br><br>v.<br><br>OFFICER JUSTIN TROJAN<br>Baltimore City Police Department<br>601 East Fayette Street<br>Baltimore, MD 21211<br><br>   And<br><br>OFFICER JASON FIGUEROA<br>Baltimore City Police Department<br>601 East Fayette Street<br>Baltimore, MD 21211<br><br>        Defendants. | Civil Action No.: |

**COMPLAINT**

COMES NOW Plaintiff, Steve E. Morse, by and through his attorneys, Anitha Johnson, Esquire, Essita Duncan, Esquire, ODELUGO & JOHNSON, L.L.C., and files this Complaint against Defendants Officer Justin Trojan and Jason Figueroa, in the above titled action. In support thereof, Plaintiff states as follows:

## PARTIES AND JURISDICTION

1. This action arises under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1981-1988. This Court has jurisdiction pursuant to 28 U.S.C. §1331, §1343, and the aforementioned Constitutional statutory provisions. Plaintiff also invokes the pendent jurisdiction of this Court to adjudicate claims under Federal law, 28 U.S.C. §1367.

2. Plaintiff is an adult citizen of the United States residing in Baltimore, Maryland.

3. At all times relevant to this matter, Defendant Officer Justin Trojan was employed by the Baltimore City Police Department in the State of Maryland. Plaintiff brings this action against Defendant Officer Justin Trojan in both his individual and official capacities.

4. At all times relevant to this matter, Defendant Officer Jason Figueroa was employed by the Baltimore City Police Department in the State of Maryland. Plaintiff brings this action against Defendant Officer Jason Figueroa in both his individual and official capacities.

## FACTS

5. On or about May 16, 2014, at approximately 2:10 p.m., Plaintiff returned to his residence at 10 East Ave, Baltimore, MD, 21224, after working as a Registered Nurse at Sinai

Hospital, where he has worked, as a nurse, for the past twelve (12) years.

6. Plaintiff took off his work clothing and chose to relax on his deck, directly outside of his home, cleaning his air rifle with oil.

7. At some point later, Plaintiff heard a knock on the back gate of his yard, from a person identifying themselves as a police officer.

8. Plaintiff opened the gate and saw three men; one uniformed officer, and two gentleman in plain clothes.

9. The uniformed officer identified himself as Officer Jason Figueroa, ID #J385 ("Defendant Figueroa").

10. The plain clothed gentleman, later identified as Officer Justin Trojan ID #2059 ("Defendant Trojan"), never identified himself as an officer to Plaintiff.

11. Defendant Figueroa asked Plaintiff if he owned a gun. Plaintiff confirmed that he did have an air rifle.

12. Plaintiff explained that his air rifle was on the porch, unloaded, and Defendant Figueroa was free to look at it.

13. Defendant Trojan stayed with Plaintiff while Defendant Figueroa walked into Plaintiff's backyard, walked up the stairs, and inspected the air rifle on the deck.

14. Defendant Figueroa confirmed to Defendant Trojan that the Plaintiff was correct in stating that the air rifle was unloaded.

15. Plaintiff calmly discussed a previous incident regarding two men dumping trash in his neighbor's yard with the police officer.

16. Defendant Figueroa told Plaintiff that it was illegal to possess an air rifle in Baltimore. Plaintiff stated that he did not believe that he had done anything wrong.

17. Defendant Figueroa collected the air rifle, and told Plaintiff he was going to submit it to the Evidence Crimes Unit (ECU).

18. Plaintiff was confused because he had not been told he was being charged with a crime or arrested.

19. Plaintiff asked what was going on, and if he could have a receipt for the air rifle in which Defendant Figueroa ignored his question, and walked back past Plaintiff toward his squad car with the air-rifle.

20. Plaintiff believing that he was not being charged with anything and that he had not done anything wrong, turned his back to go back to his deck.

21. At that point, Defendant Trojan, who had been silent during the exchange, said, "Fuck that, I'm going to arrest you," and violently attacked Plaintiff.

22. As a result of that attack, Plaintiff was seriously injured, and among other things, Plaintiff suffered a broken right front tooth and broken bone in his mouth which required surgery to regrow the bone, nerve damage to his wrist, injury to his knee, and other damages.

23. Defendant Trojan placed handcuffs on Plaintiff so tight that the handcuffs caused cuts to his wrist and permanent nerve damage that still exist today.

24. Defendants walked Plaintiff down the alley full of broken glass, with no shoes on, and made him sit on the sidewalk, visible to his neighbors, as he awaited the police van.

25. While waiting for the police van, Plaintiff heard Defendant Trojan say to Defendant Figueroa, "This guy is going to say that I hurt him."

26. When the police van arrived, Plaintiff was unable to climb into the van because of the injury to his knee.

27. Defendants Figueroa and Defendant Trojan tossed Plaintiff into the police van, without a seatbelt or other safety equipment. Plaintiff was violently thrown around the back of the police van while being transported to Central Booking.

28. Several hours passed, from the time Plaintiff was assaulted by Defendant Trojan, to when he finally had the cuffs removed from his wrists at the detention center.

29. At no point was Plaintiff Mirandize, or informed of what he was being charged with, until approximately three o'clock the following morning.

30. Defendants arrested Plaintiff without a warrant, and charged him with one count of second degree assault, one count of having an alcoholic beverage and damaging property, one count of disorderly conduct, and one count of discharging a gas/air/pellet gun.

31. The bail for Plaintiff was set at fifteen thousand dollars ($15,000).

32. Bail was paid on behalf of Plaintiff at approximately ten o'clock that same morning.

33. Despite payment being made, Plaintiff was not released from custody until six o'clock the next evening. Plaintiff was advised that he had to remain at Central Booking for twenty-four hours.

34. Plaintiff reported to Express Care Urgent Care Center the morning after his release for evaluation and treatment.

35. The charges filed against the Plaintiff, were later terminated on July 23, 2014, in favor of Plaintiff.

36. As a result of the assault by Officer Trojan, Plaintiff sustained permanent injury to his tooth, bone in his mouth, wrists, and other damages including payment of attorney fees.

## COUNT I - VIOLATIONS OF 42 U.S.C. §1983: ARREST

**(Defendant Officer Figueroa)**
**(Defendant Officer Trojan)**

37. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 36 into this count as if fully set forth.

38. At all relevant times, the conduct of the Defendants were subject to 42 U.S.C. §1983, 1986, and 1988.

39. Defendants Officer Figueroa and Officer Trojan acting under the color of law, unlawfully and without probable cause, placed Plaintiff under arrest and detained him.

40. Neither Defendants Officer Figueroa nor Officer Trojan advised Plaintiff of his rights at any time following the arrest.

41. The arrest was made without reasonable grounds for the Defendants to believe Plaintiff committed an offense and the Defendants knew that there was no probable cause to arrest Plaintiff.

42. Acting under the color of law, Defendants Officer Figueroa and Officer Trojan worked together to deny Plaintiff his rights, privileges, or immunities secured by the Constitution of the United States or by Federal law:

(a) by depriving Plaintiff of his liberty without due process of law, by taking him into custody and holding him there against his will;

(b) by making an unreasonable search and seizure of his property without due process of law;

(c) by refusing or neglecting to prevent such deprivations and denials to Plaintiffs, thereby depriving Plaintiff of his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and;

(d) by conspiring for the purpose of impeding and hindering the due course of justice with the intent to deny Plaintiff equal protection of laws.

43. As a result of the concerted unlawful and malicious arrest by Defendants Officer Figueroa and Officer Trojan, Plaintiff Steve Morse was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C §1983.

WHEREFORE, Plaintiff demands as follows:

a. Judgment against Defendants Officer Figueroa and Officer Trojan for compensatory damages in the maximum amount allowed by the law;

b. Judgment against Defendants Officer Figueroa and Officer Trojan, for punitive damages in the maximum amount allowed by the law;

c. Judgment against Defendants Officer Figueroa and Officer Trojan for reasonable attorney's fees, costs and such further relief as this Court deems proper.

## COUNT II - VIOLATIONS OF 42 U.S.C. §1983: DETENTION AND CONFINEMENT/FALSE IMPRISONMENT

**(Defendant Officer Figueroa)**
**(Defendant Officer Trojan)**

44. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 43 into this count as if fully set forth.

45. As a result of their concerted unlawful and malicious detention and confinement of Plaintiff, Defendants Officer Figueroa and Officer Trojan deprived Plaintiff of both his rights to his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §1983.

46. As a direct and proximate result of the wrongful detention, Plaintiff has suffered injuries, severe humiliation, mental anguish, and loss of self-esteem.

WHEREFORE, Plaintiff demands as follows:

a. Judgment against Defendants Figueroa and Trojan for compensatory damages in the maximum amount allowed by the law;

b. Judgment against Defendants Figueroa and Trojan for punitive damages in the maximum amount allowed by the law;

c. Judgment against Defendants Figueroa and Trojan for reasonable attorney's fees, costs and such further relief as this Court deems proper.

### COUNT III – VIOLATIONS OF 42 U.S.C §1983: DEPRIVATION OF CIVIL RIGHTS

47. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 46 into this count as if fully set forth.

56. The actions of Defendants Officer Figueroa and Officer Trojan deprived Plaintiff of rights, privileges, and immunities under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

48. As a direct and proximate result of Defendants Officer Figueroa's and Officer Trojan's actions, Plaintiff Steve Morse suffered and continue to suffer mental anguish, psychological and emotional distress, and physical pain and suffering.

WHEREFORE, Plaintiff demands as follows:

a. Judgment against Defendants Officer Figueroa and Officer Trojan for compensatory damages in the amount of $10,000,000.00 (TEN MILLION DOLLARS);

b. Judgment against Defendants Officer Figueroa and Officer Trojan for punitive damages in the maximum amount allowed by the law;

c. Judgment against Defendants Officer Figueroa and Officer Trojan for reasonable attorney's fees, costs and such further relief as this Court deems proper.

## COUNT IV – MALICIOUS PROSECUTION

**(Defendant Officer Figueroa)**
**(Defendant Officer Trojan)**

49. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 49 into this count as if fully set forth.

50. Defendant Officers Figueroa and Trojan instituted criminal proceedings against the Plaintiff.

51. The proceedings terminated in favor of Plaintiff.

52. There was no probable cause for the proceedings.

53. The statement of actual facts presented to a prosecutor would not have led a reasonable person in that position to believe or entertain a suspicion that Plaintiff was guilty.

54. The prosecution was instituted with malice or at least for some purpose other than to bring the Plaintiff to justice.

55. Furthermore, the actions of the Defendants were motivated by ill will, hatred, evil intent, and were otherwise malicious.

56. As a direct and proximate result of the Defendant Officers' malicious prosecution of Plaintiff, Plaintiff has incurred, and will continue to incur legal fees, emotional distress, embarrassment, humiliation and loss of self-esteem.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on the issues set forth in this Complaint.

**RELIEF**

WHEREFORE, Plaintiff demands as follows:

a. Judgment against Defendants Officer Trojan and Figueroa for compensatory damages in the maximum amount allowed by the law;

b. Judgment against Defendants Officer Trojan and Figueroa for punitive damages in the maximum amount allowed by the law; and

c. Judgment against Defendants Officer Figueroa and Officer Trojan for reasonable attorney's fees, costs and such further relief as this Court deems proper.

May 15, 2017

>Respectfully submitted,
>
>ODELUGO & JOHNSON, L.L.C.
>
>*[signature]*
>Anitha Johnson, Esquire
>Essita Duncan, Esquire
>4601 Presidents Drive, Suite 145
>Lanham, MD 20706
>Phone: (301) 832 3020
>Fax: (301) 832 3029
>anitha.johnson@odelugojohnson.com
>eduncan@odelugojohnson.com
>*Counsels for Plaintiff*

## AFFIRMATION

I, Steve E. Morse, affirm and attest that the foregoing Complaint and the facts contained therein are true, accurate, and correct to the best of my knowledge, information and belief.

_____          2/28/17
Steve E. Morse                                                                             Date